IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JONATHAN ORTIZ-MUÑIZ,

Petitioner

v.

UNITED STATES OF AMERICA,

Respondent

CIVIL 12-1575 (PG)
(CRIMINAL 10-356 (PG))

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I. PROCEDURAL HISTORY

Petitioner, formerly a uniformed member of the Police of Puerto Rico, was indicted on September 23, 2010 in three counts of a five-count indictment in which one other former law enforcement officer and one (hopeful) police officer were also indicted in a reverse sting operation where a fast sham cocaine transaction was the focus.   These three fell in the line of extra duty as did numerous uniformed members of either the Police of Puerto Rico or the Department of Corrections for the Commonwealth of Puerto Rico over the years[1].

_____

[1]See e.g. United States v. Diaz-Castro, 752 F.3d 101, 104-05 (1st Cir. 2014) ("Operation Guard Shack");  United States v. Delgado-Marrero, 744 F.3d 167, 172 n. 1 (1st Cir. 2014) ("Operation Guard Shack" which yielded 26 indictments against 89 law enforcement officers in a 26-month period);  United States v. Bristol-Martir, 570 F.3d 29 (1st Cir. 2009); United States v. Caraballo-Rodriguez, 480 F.3d 62 (1st Cir. 2007);  United States v. Sanchez-Berrios, 424 F.3d 65 (1st Cir. 2005); United States v. Serrano-Beauvaix, 400 F.3d 50 (1st Cir. 2005); United States v. Flecha-Maldonado, 373 F.3d 170 (1st Cir. 2004); also see United States v. Gonzalez-Perez, ___F.3d___, 2015 WL 300967 at *1 (1st Cir. January 23, 2015); Camacho-Morales v. Caldero, ___F. Supp. 3d___,

CIVIL NO. 12-1575 (PG)                    2
(CRIMINAL NO. 10-0356 (PG))

Petitioner was charged in Count One in that on or about September 16, 2010, in the District of Puerto Rico and elsewhere within the jurisdiction of this court, he and Wendell Rivera-Ruperto and Isaias Reyes-Arroyo did knowingly and intentionally combine, conspire, confederate, and agree together with each other and others, both known and unknown to the Grand Jury, to commit an offense against the United States, that is, to possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance. All in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(ii)(II) and 846. (Criminal No. 10-0356 (PG), Docket No. 3). Count Two of the indictment charges the three defendants with violating the corresponding aiding and abetting statute, 18 U.S.C. § 2 in that they aided and abetted each other in their attempt to possess with the intent to distribute cocaine on September 16, 2010. Count Five charges petitioner with a firearms offense committed the same date, that is with knowingly possessing a firearm in furtherance of a drug trafficking crime as defined in Title 18, U.S.C. § 924(c)(2), that is, a violation of Title 21, U.S.C. §§ 841(a)(1) and 846, involving a conspiracy and attempt to possess with intent to distribute five kilograms or more a mixture or substance containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance, as charged in Counts One and

_____

2014 WL 7252090 at *2 (D.P.R. Dec. 18, 2014) ("Operation Guard Shack").

CIVIL NO. 12-1575 (PG)                    3
(CRIMINAL NO. 10-0356 (PG))

Two of the Indictment herein, an offense, either of which may be prosecuted in a court of the United States, all in violation of 18 U.S.C. § 924(c)(1)(A).[2]  This is a very common charge in this court where hundreds of local law enforcement officers, beginning with a former faculty member of the Police Academy, have been prosecuted over the last three decades.

Because of the particular circumstances of the case, the three defendants were appointed counsel prior to the initial appearances.   (Criminal No. 10-0356 (PG), Docket No. 8).  The three defendants were temporarily detained at their initial appearance on October 6, 2010 and all defendants were detained pending trial, including petitioner.   (Criminal No. 10-0356 (PG), Docket No. 22).  In the U.S. Magistrate Judge's Order of Detention, the following was noted:

> In addition to the evidence proffered as to the nature of the offense, the fact this defendant was a law enforcement [officer] at the time of the commission of the offense charged and the presumption of the charges, evidence of video recorded illegal activities shows, this defendant's participation in providing escort to the presumed controlled substances and the payment of monies to this defendant for the security provided to the presumed narcotic dealers, while defendant was armed.  For this reason, defendant faces the additional charge of firearms in furtherance of a drug trafficking activity in violation of Title 18, United States Code, Section 924(c). There was strong evidence in support of government's request for detention for

_____

[2] See e.g. United States v. Gonzalez-Perez, 2015 WL 300967 at *1; United States v. Delgado-Marrero, 744 F.3d at 175;  United States v. Diaz-Diaz, 433 F.3d 128, 131-32 (1st Cir. 2005); United States v. Sanchez-Berrios, 424 F.3d at 72;  Reyes-Velazquez v. United States, 2012 WL 4483679 (D.P.R. March 5, 2012); cf. United States v. Cortes-Caban, 691 F.3d 1 (1st Cir. 2012).

CIVIL NO. 12-1575 (PG)                    4
(CRIMINAL NO. 10-0356 (PG))

being a danger to the community upon participating in a drug trafficking conspiracy and the firearm charge in furtherance of a drug trafficking offense.

        (Criminal No. 10-0356 (PG), Docket No. 22 at 2-3).

        The findings as to the other defendants were similar.  (Criminal No. 10-0356 (PG), Docket Nos. 18, 20).[3]   Attorney Michael S. Corona, having been retained by petitioner's family to represent him,  filed a notice of appearance on October 13, 2010.   He sought reconsideration of the detention order in a comprehensive motion.  The request was denied.

        After initially pleading not guilty to the charges,    petitioner moved to change his plea on March 1, 2011.  (Criminal No. 10-0356 (PG), Docket No. 45). Petitioner entered a guilty plea on March 10, 2011 as to Count Two and Count Five of the indictment.   The terms of the plea agreement called for holding petitioner accountable for less than 500 grams of cocaine, thus establishing a base offense level of 24, pursuant to U. S. S. G. § 2D1.1(a)(5), a 2-level enhancement for abuse of position of trust, pursuant to U. S. S. G. § 3B1.3, and a 3-level reduction for acceptance of responsibility, pursuant to U. S. S. G. § 3E1.1(a). (Criminal No. 10-0356 (PG), Docket No. 52 at 5).    The parties agreed to a

_____

        [3]The court will note the framework of other report and recommendations related to convicted law enforcement officers, such as Karla M. Colon-Bracero, due to the similar nature of their allegations and the uniformity of the plea agreements in the majority of cases.

CIVIL NO. 12-1575 (PG)                    5
(CRIMINAL NO. 10-0356 (PG))

recommendation of 48 months as to the narcotics charge and 60 months on the firearms charge, to run consecutively to each other, assuming a Criminal History Category of I.

Petitioner was sentence on July 15, 2011 to 37 months in the narcotics count and the 60 month default minimum term on the firearms count[4].  (Criminal No. 10-0356 (PG), Docket No. 92).  The remaining count was then dismissed.  No motions followed (except for transcripts which have since been filed) and petitioner did not file a notice of appeal.

II. MOTION TO VACATE, SET ASIDE OR VACATE SENTENCE

This matter is before the court on petitioner Jonathan Ortiz-Muniz's  timely motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255, filed on July 18, 2012.  (Docket No. 1.)   Petitioner accuses his attorney Michael S. Corona of acting in a very unprofessional manner in his representation, thus violating petitioner's   Fifth and Sixth Amendment rights under the U.S. Constitution.   Petitioner charges counsel with giving him misleading advice and coercive actions which made petitioner lose his right to trial by jury. (Docket No. 1-2 at 2).  He also notes his plea was involuntary and unintelligent.   Petitioner mentions for the first time the argument of entrapment and his general ignorance

_____

[4]See e.g. United States v. Rivera-Gonzalez, ___F.3d___, 2015 WL 234774 at *3 (1st Cir. Jan. 20, 2015) (discussion of minimum term as the recommended guideline sentence).

CIVIL NO. 12-1575 (PG)                    6
(CRIMINAL NO. 10-0356 (PG))

of what was occurring during the sting operation.  He did not know beforehand he was protecting a drug deal.

Petitioner stresses that the F.B.I. entrapped him and numerous defendants to accomplish their mission illegally[5]. This was done through a confidential informant (an arrested police officer) who received benefits for his role in the entrapment plot. This police officer recruited another police officer to further the entrapment plot. Petitioner's knowledge of these event was gotten through attorney Corona who hired a private investigator. (Docket No. 1-2 at 3).

Petitioner stresses that he was hired for intimidation during a cocaine sale and that the police officers would be present for the security and safety of the transaction. He himself was recruited by co-defendant Isaias Reyes-Arroyo who was recruited by the other co-defendant, Wendell Rivera-Ruperto.  He emphasizes that he did not possess a weapon during this protection which took place in a motel room which had audio and video recording during the transaction. (Docket No. 1-2 at 4). Petitioner was told that "he was hired only to be present for intimidation....No more!" (Docket No. 1-2 at 4).   He states that the confidential informant gave him a weapon since he did not bring one, and told him to expose the weapon, which he did.  After the transaction, the weapon was handed back

---

[5]The arrest of almost 90 law enforcement officers in Puerto Rico was the subject of world-wide news coverage.

CIVIL NO. 12-1575 (PG)                     7
(CRIMINAL NO. 10-0356 (PG))


to the informant.  (This is not a new allegation since it was stressed in detail in the motion for reconsideration of the order of detention.  (Criminal No. 10-356 (PG), Docket No. 33 at 4, ¶ 13).   And on the date of sentencing, counsel Corona informed the court that petitioner did not know that he was guarding drugs until he was already in the place where the transaction occurred, that is, during the course of the meeting. (Criminal No. 10-356 (PG), Docket No. 151 at 4)). He stresses the bizarre nature of the transaction since there were never any drugs. "Never!" (Docket No. 1-2 at 6).

Petitioner blames his attorney for not protesting the entrapment since one co-defendant went to trial and was acquitted,[6] Fred Neftali-Valent[o]n)(sic). "Attorney Michael Corona-Muñoz knew that one of petitioner's co-defendants was found "Not Guilty" at a jury trial.  More so, the wrongful entrapment." (Docket No. 1-2 at 6)   While petitioner was in pretrial detention, he learned that his attorney also represented seven or eight other law enforcement officers "in this conspiracy", and that attorney Corona was in favor of the U.S. Attorney's Office and not in favor of petitioner. (Docket No. 1-2 at 8).  In order to avoid detection, the U.S. Attorney's Office spread the one case over several indictments, thus spreading the defendants.  Petitioner appeals *ad misericordiam* as to the hard earned money spent by all to pay the attorney and that the dignity of the judiciary

---

[6]See e.g. United States v. Gonzalez-Perez, 2015 WL 300967 at *3.

CIVIL NO. 12-1575 (PG)                              8
(CRIMINAL NO. 10-0356 (PG))


process should be restored.   Petitioner relies on <u>Strickland v. Washington</u>, 466

U.S. 668, 104 S. Ct. 2052 (1984), <u>Missouri v. Frye</u>, 566 U.S.___, 132 S. Ct.

1399, 1409 (2012), <u>Lafler v. Cooper</u>, 566 U.S. ___, 132 S. Ct. 1376, 1384

(2012), <u>Padilla v. Kentucky</u>, 559 U.S. 356, 130 S. Ct. 1473 (2010), and <u>Cuyler v.

Sullivan</u>, 446 U.S. 335, 348, 100 S. Ct. 1708 (1980), and others, in arguing that

his guilty plea was not voluntary, and not intelligent, due to misleading advice

from his attorney, entrapment and conflict of interest.  He mentions the names

of other law enforcement officers represented by attorney Corona, such as Luis

Gonzalez[7], Bernardo Cruz Trujillo[8], and Luis Perez[9] for example[10].   The phrase

"conflict of interest" is repeated constantly, as is the word entrapment.  Petitioner

_____

[7]Criminal No. 10-344-06 (PG), <u>U.S.A. v. Luis A. Gonzalez-Torres</u>.

[8]Criminal No. 10-384 (GAG), <u>U.S.A. v. Bernardo Cruz-Trujillo</u>.

[9]Criminal No. 10-331 (JAF), <u>U.S.A. v. Luis E. Perez-Ortiz</u>.

[10]Attorney Corona also represented wayward law enforcement officers in at least the following cases: Criminal No. 10-310 (DRD), <u>United States v. Obed Acevedo-Ranero</u> and <u>Angel Acevedo-Perez</u>; Criminal No. 10-318 (CCC), <u>United States v. William Rivera-Garcia</u>; Criminal No.  10-320 (JAG), <u>United States v. Olvin Garcia-Huertas</u> and <u>Jose R. Roman-Mendez</u>; Criminal No. 10-328 (ADC), <u>United States v. Eusebio Hernandez-Nieves</u>;  Criminal No. 10-329 (PG), <u>United States v. Gabriel Lozada-Torres</u>; Criminal No. 10-333, <u>United States v. Javier A. Garcia-Castro</u> (GAG);Criminal No. 10-335 (DRD), <u>United States v.  Hector Hernandez-Aguilar</u>; Criminal No. 10-355 (DRD), <u>United States v.  Raul Vega-Sosa</u>.

CIVIL NO. 12-1575 (PG)                    9
(CRIMINAL NO. 10-0356 (PG))

stresses the divided loyalties that attorney Corona had in  representing 7 or 8

defendants in the same conspiracy.

        Petitioner always wanted to go to trial because of the wrongful entrapment.

(Docket No. 1-2 at 13).  Petitioner also argues that the waiver of appeal was not

voluntary and not knowledgeably done.   He stresses that the court must also

consider the professional misconduct of all the parties, the F.B.I., the U.S.

Attorney's Office for example. (Docket No. 1-2 at 29).  He also cites the Model

Rules of Professional Conduct and focuses on how counsel Corona violated those

rules.  He questions which of Mr. Corona's defendants received the most favorable

sentence  compared to his. (Docket No. 1-2 at 20).

        Petitioner seeks that his conviction be vacated and that he not be prosecuted

again, or that he have the right to seek a trial, which right he lost due to his

attorney's malpractice.

        On October 29, 2012, in response to the section 2255 motion, the

government stresses that petitioner's arguments are conclusory, speculative and

lacking in specificity.   It argues that petitioner has waived the challenge to the

voluntariness of his guilty plea by  attacking it for the first time on collateral review

and not on direct review.  It emphasizes the difference between the argument now

and the facts admitted to at the change of plea hearing, including the weapon

being his. (Criminal No. 10-356 (PG), Docket No. 165).   The government

CIVIL NO. 12-1575 (PG)                     10
(CRIMINAL NO. 10-0356 (PG))

challenges the actual innocence argument (because the weapon he possessed was thrust into his hand by the informant), referencing the statement of facts appended to the plea agreement.   The government refers to the transcript of the proceedings which reflects the traditional core questioning of a Rule 11 proceeding, quoting petitioner's own words.   Globally, the government labels petitioner's allegations of misconduct and some kind of consideration with attorney Corona as preposterous and emphasizes that the record is devoid also of any evidence of an actual conflict of interest involving counsel's loyalties, beyond conjecture and conclusory unfounded allegations. The government concludes by emphasizing that petitioner is not entitled to an evidentiary hearing based upon his own contradictory statements.  (Docket No. 8 at 12-13).  In short, "a defendant who asserts a fact in answer to a judge's question during a change-of-plea proceeding ought to be bound by that answer." United States v. Alegria, 192 F.3d 179, 186 (1st Cir. 1999). (Docket No. 8 at 10).

Petitioner filed a reply to the response on November 29, 2012. (Docket No. 11).   He observes that the response of the United States Attorney is a smokescreen which is intended to deviate the court from the truth which is that petitioner never intended to bring a firearm to the place where he was videotaped. He was set up with a weapon and his attorney knew it.  Petitioner challenges the court to make moral findings and that the integrity of the court will prevail over the

1  CIVIL NO. 12-1575 (PG)                11
2  (CRIMINAL NO. 10-0356 (PG))

3

4  divided loyalties of attorney Corona and his representation of so many defendants

5  in the same conspiracy.  Petitioner stresses the deception practiced upon the court
6
7  and prosecutorial misconduct all around.  He relied on the misleading advice of his

8  attorney like a puppet, but once in prison petitioner sought the advice  of someone

9  a little bit more knowledgeable about the criminal process.

10      Petitioner asks the court to look at the case of Neftali Valentin-Fred[11] who
11
12  was acquitted with the use of an entrapment defense, and also the case of David
13  Maldonado, who was also acquitted[12].

14      On April 9, 2013,  petitioner filed an amended supplemental motion under

15  28 U.S.C. § 2255 (Addendum).   Petitioner focuses on the ineffective assistance
16
17  of counsel due to his not being informed of the entrapment defense in relation to

18  the firearms charge, 18 U.S.C. § 924 (c). Since the weapon was thrust into his

19  hand by an informant who also told him to display it (so that the video recording

20  would reflect his carrying the weapon), he was innocent of the charge.   He recites

21

22

23      [11]In Criminal No. 10-318 (CCC), United States v. Neftali Valentin-Fred,
    the defendant was acquitted of similar charges.  He was represented by
24  attorney Luis R. Rivera-Rodriguez.  No entrapment instruction was given and
    was not presented on closing argument. The acquittal occurred on June 1,
25  2012, six months before petitioner filed his reply brief.

26      [12] In Criminal No. 10-325 (CCC), United States v. David Maldonado-
27  Rosado, the defendant was acquitted of similar charges on October 30, 2012,
    one month before petitioner filed his reply brief. He was represented by
28  attorney Irma R. Valldejuli Perez.  No entrapment instruction was given.

CIVIL NO. 12-1575 (PG)                    12
(CRIMINAL NO. 10-0356 (PG))

and repeats recent and traditional case law related to ineffective assistance of counsel claims.

Because petitioner appears pro se, her pleadings are considered more liberally, however inartfully or opaquely pleaded,  than those penned and filed by an attorney.  See Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007); Nazario-Baez v. Batista, 29 F. Supp. 3rd 65, 69 (D.P.R. 2014); Proverb v. O'Mara, 2009 WL 368617 (D.N.H. Feb. 13, 2009).  Notwithstanding such license, petitioner's pro se status does not excuse him from complying with both procedural and substantive law.  See Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997)[13].

Having considered petitioner's arguments and the government's response, and for the reasons set forth below, I recommend that petitioner Ortiz-Muñiz's motion to vacate, set aside, or correct sentence be DENIED without evidentiary hearing.

III.  DISCUSSION

Under section 28 U.S.C. § 2255, a federal prisoner may move for post conviction relief if:

---

[13]As an aside, I note the routine violation, even by convicted police officers, of the local rule which requires leave of court to file a reply brief. Local Civil Rule 7 (c) (Reply Memorandum). Again, the repetition in petitioner's reply proves that the exception makes the rule.

CIVIL NO. 12-1575 (PG)                    13
(CRIMINAL NO. 10-0356 (PG))

> the sentence was imposed in violation of the Constitution
> or laws of the United States, or that the court was without
> jurisdiction to impose such sentence, or that the sentence
> was in excess of the maximum authorized by law, or is
> otherwise subject to collateral attack. . . .

28 U.S.C. § 2255(a); Hill v. United States, 368 U.S. 424, 426-27, 82 S. Ct. 468

(1962); David v. United States, 134 F.3d 470, 474 (1st Cir. 1998).

It is well settled that the Sixth Amendment right to counsel guarantees

effective counsel.  See Strickland v. Washington, 466 U.S. at 686-87, 104 S. Ct.

2052; United States v. Ortiz, 146 F.3d 25, 27 (1st Cir. 1998).   Nevertheless,

petitioner bears a "very heavy burden" in his attempt to have his sentence vacated

premised on an ineffective assistance of counsel claim.  See Argencourt v. United

States, 78 F.3d 14, 16 (1st Cir. 1996); Lema v. United States, 987 F.2d 48, 51 (1st

Cir. 1993).   This is particularly true in this circuit where a lawyer's performance

is deficient under Strickland ". . .only where, given the facts known at the time,

counsel's choice was so patently unreasonable that no competent attorney would

have made it."  United States v. Rodriguez, 675 F.3d 48, 56 (1st Cir. 2012),

quoting Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010), which in turn quotes

Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006).

The United States Supreme Court has developed a two-pronged test to

determine whether a criminal defendant was denied his constitutionally guaranteed

effective assistance of counsel.  See Strickland v. Washington, 466 U.S. at 687,

CIVIL NO. 12-1575 (PG)                    14
(CRIMINAL NO. 10-0356 (PG))

104 S. Ct. 2052.  Pursuant to this test, petitioner Ortiz-Muñiz must first establish that his attorney Michael S. Corona in the criminal proceedings was deficient in that the quality of his legal representation fell below an objective standard of reasonableness.  See id. at 688, 104 S. Ct. 2052; Rosenthal v. O'Brien, 713 F.3d 676, 685 (1st Cir. 2013); Encarnacion-Montero v. United States, ____F. Supp. 2d____, 2014 WL 3818195 at *3 (D.P.R. July 31, 2014).  In order to satisfy the first-prong of the aforementioned test, petitioner  "must show that 'in light of all the circumstances, the identified acts or omissions [allegedly made by his trial attorney] were outside the wide range of professionally competent assistance.'" Tejeda v. Dubois, 142 F.3d 18, 22 (1st Cir. 1998) (citing Strickland v. Washington, 466 U.S. at 690, 104 S. Ct. 2052).  Petitioner must thus overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Smullen v. United States, 94 F.3d 20,  23 (1st Cir. 1996) (citing Strickland v. Washington, 466 U.S. at 689, 104 S. Ct. 2052).  Finally, a court must review counsel's actions deferentially, and should make every effort "to eliminate the distorting effects of hindsight." Argencourt v. United States, 78 F.3d at 16 (citing, Strickland v. Washington, 466 U.S. at 689, 104 S. Ct. 2052); see also Burger v. Kemp, 483 U.S. 776, 789, 107 S. Ct. 3114 (1987).

The second prong of the test, "[t]he 'prejudice' element of an ineffective assistance [of counsel] claim[,] also presents a high hurdle.  'An error by counsel,

CIVIL NO. 12-1575 (PG)                15
(CRIMINAL NO. 10-0356 (PG))

even if professionally unreasonable, does not warrant setting aside the judgment

of a criminal proceeding if the error had no effect on the judgment.'" Argencourt

v. United States, 78 F.3d at 16 (citing Strickland v. Washington, 466 U.S. at 691,

104 S. Ct. 2052); Campuzano v. United States, 976 F. Supp. 2d 89, 99 (D.P.R.

2013).   Thus, petitioner must affirmatively "prove that there is a reasonable

probability that, but for his counsel's errors, the result of the proceeding would

have been different."  Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994)

(citing Strickland v. Washington, 466 U.S. at 687, 104 S. Ct. 2052); Encarnacion-

Montero v. United States, 2014 WL 3818195 at *3. That is, if petitioner succeeds

in showing deficiencies in his legal representation, then he must conclusively

establish that said deficiencies operated a real prejudice against her in the criminal

proceedings.  See Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. 2052.

There is no doubt that the cited two-part test also applies to representation

outside of the trial setting, which would include sentence and appeal.  See Hill v.

Lockhart, 474 U.S. 52, 57, 106 S. Ct. 366 (1985); Bonneau v. United States, 961

F.2d 17, 20-22 (1st Cir. 1992); United States v. Tajeddini, 945 F.2d at 468-69,

abrogated on other grounds by Roe v. Flores-Ortega, 528 U.S. 470, 120 S. Ct.

1029 (2000).   In Hill v. Lockhart, supra, the Supreme Court applied

Strickland's  two-part test to ineffective assistance of counsel claims in the

guilty plea context.  Id. at 58, 106 S. Ct. 366 ("We hold, therefore, that the

CIVIL NO. 12-1575 (PG)                    16
(CRIMINAL NO. 10-0356 (PG))

two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel."); Torres-Santiago v. United States, 865 F. Supp. 2d 168, 178 (D.P.R. 2012).  As Hill v. Lockhart, *supra* explained, "[i]n the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence already set forth in [other cases].  The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. at 58-59, 106 S. Ct. 366.  Accordingly, petitioner would have to show that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59, 106 S. Ct. 366; Toro-Mendez v. United States, 976 F. Supp. 2d 79, 86 (D.P.R. 2013).

Assuming  that counsel's representation fell below an objective standard of reasonableness, petitioner would still have to prove that this resulted in prejudice to his case.  See Owens v. United States, 483 F.3d 48, 63 (1st Cir. 2007) (quoting Strickland v. Washington, 466 U.S. at 687-88, 104 S. Ct. 2052). For our purposes, it makes no difference in which order the two-part test is applied.  See  United States v. Carrigan, 724 F. 3d 29 (1st Cir. 2013); Turner v. United States, 699 F.3d 578, 584 (1st Cir. 2012).

CIVIL NO. 12-1575 (PG)                    17
(CRIMINAL NO. 10-0356 (PG))


        Petitioner strenuously and repetitively seeks an evidentiary hearing in order to press forth his allegations of conflict of interest, entrapment and prosecutorial misconduct.  However, it has been held that an evidentiary hearing is not necessary if the § 2255 motion is inadequate on its face or if, even though facially adequate, "is conclusively refuted as to the alleged facts by the files and records of the case."  United States v. McGill, 11 F.3d 223, 226 (1st Cir. 1993) (quoting Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974)). See Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003).  "In other words, a '§ 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently incredible.'"  United States v. McGill, 11 F.3d at 226 (quoting Shraiar v. United States, 736 F.2d 817, 818 (1st Cir. 1984)); Berroa-Santana v. United States, 939 F. Supp. 2d 109, 116 (D.P.R. 2013).

        With this synopsis as background, it is clear that the court addressed the traditional Rule 11 core concerns at the change of plea hearing.  That is, the court instructed the petitioner, a former police officer and corrections officer  for the Commonwealth of Puerto Rico, and holder of an associate degree in criminal justice,  as to the nature of the charges, the consequences of his pleading

CIVIL NO. 12-1575 (PG)                    18
(CRIMINAL NO. 10-0356 (PG))

guilty, including the possible sentence that petitioner would be facing, and the absence of coercion, that is, the voluntariness of the guilty plea.  See United States v. Cotal-Crespo, 47 F.3d 1, 4 (1st Cir. 1995); Nieves-Ramos v. United States, 430 F. Supp.2d 38, 43-44 (D.P.R. 2006).  (Criminal No. 10-0356 (PG), Docket No. 165).  Petitioner acknowledged being  satisfied with the services of his attorney Corona.  (Criminal No. 10-0356 (PG), Docket No. 165 at 4).   The court made certain that petitioner understood the specific charges and the consequences of the guilty plea, assuring that petitioner had discussed the consequences of pleading guilty with his attorney, but also assuring that petitioner was aware of the rights he was relinquishing by pleading guilty and not going to trial, including the right to present evidence on his own behalf. (Criminal No. 10-0356 (PG), Docket No. 165 at 5-6).  Petitioner assured the court that no threats or promises had been made to him for him to plea guilty and that he did not know what sentence he would receive, only the recommendation.  (Criminal No. 10-0356 (PG), Docket No. 165 at 8-9). A factual summary of the evidence was provided and petitioner agreed to the same.  (Criminal No. 10-0356 (PG), Docket No. 165 at 9-10, 12).  There was never protestation or hesitation on the part of the defendant at the change of plea hearing.  This leads me to the primary redoubt that petitioner faces.

A. PROCEDURAL DEFAULT

CIVIL NO. 12-1575 (PG)              19
(CRIMINAL NO. 10-0356 (PG))

 

 

     "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Lefkowitz v. Newsome, 420 U.S. 283, 288, 95 S. Ct. 886 (1975) (quoting Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602 (1973)); see Perocier-Morales v. United States, 887 F. Supp. 2d 399, 417 (D.P.R. 2012);  Nieves-Ramos v. United States, 430 F. Supp. 2d at 43; Caraballo Terán v. United States, 975 F. Supp. 129, 134 (D.P.R. 1997).

     Since the sentence more than complied with the plea agreement terms in petitioner's favor, the court did not explain to petitioner that he could appeal the sentence.   Rather the court informed petitioner that the waiver was effective.  (Criminal No. 10-356 (PG), Docket No. 151 at 13).   No appeal followed.  No motion for reconsideration was filed.  No motion to withdraw the guilty plea was filed either before or after the five month period between plea and sentence.

       A significant bar on habeas corpus relief is imposed when a prisoner did not raise claims at trial or on direct review.  In such cases, a court may hear those claims for the first time on habeas corpus review only if the petitioner has "cause" for having procedurally defaulted his claims, and if the petitioner suffered "actual prejudice" from the error of which [s]he complains.

CIVIL NO. 12-1575 (PG)                    20
(CRIMINAL NO. 10-0356 (PG))


     United States v. Sampson, 820 F. Supp.2d 202, 220 (D.Mass. 2011),

citing Owens v. United States, 483 F.3d at 56, also citing Oakes v. United

States, 400 F.3d 92, 95 (1st Cir. 2005) ("If a federal habeas petitioner

challenges his conviction or sentence on a ground that he did not advance on

direct appeal, his claim is deemed procedurally defaulted.")   To obtain

collateral relief in this case, petitioner must show cause excusing his double

procedural default and actual prejudice resulting from the errors he is

complaining about.   See United States v. Frady, 456 U.S. 152, 167-68, 102 S.

Ct. 1584, 1594 (1982).   Ineffective assistance of counsel can clearly supply the

cause element of the cause and prejudice standard.   See Murray v. Carrier, 477

U.S. 478, 488, 106 S. Ct. 2639 (1986), cited in Bucci v. United States, 662 F.3d

18, 29 (1st. Cir. 2011).   However, petitioner has failed to show that defense

counsel's representation was constitutionally ineffective under the Strickland v.

Washington two-part inquiry in terms of providing a reason why this issue is

being presented here for the first time.   Petitioner had law enforcement

experience with more than one agency and had an associate degree in criminal

justice.  He was detained with many other law enforcement officers facing

identical charges and most of which entered guilty pleas to identical charges.

Petitioner's argument now suffers from double procedural default which is not

attributable to his attorney, that is, failure to initially attack the validity of the

CIVIL NO. 12-1575 (PG)                    21
(CRIMINAL NO. 10-0356 (PG))

basis for conviction by not moving to withdraw his guilty plea at the trial level, and failure to file a timely notice of appeal after sentencing.   See United States v. Frady, 456 U.S. at 167-68, 102 S. Ct. at 1594.

It is hornbook law that ". . .the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review.  Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" Bousely v. United States, 523 U.S. 614, 621, 118 S. Ct. 1604 (1998); see Casas v. United States, 576 F. Supp. 2d 226, 232-33 (D.P.R. 2006).

In any event, it is well settled that a court "will not permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so."  United States v. Parrilla-Tirado, 22 F.3d 368, 373 (1st Cir. 1994) (quoting United States v. Pellerito, 878 F.2d 1535, 1539 (1st Cir. 1989)). "[I]t is the policy of the law to hold litigants to their assurances at a plea colloquy."  Torres-Quiles v. United States, 379 F. Supp. 2d 241, 248-49 (D.P.R. 2005) (citing United States v. Marrero-Rivera, 124 F.3d 342, 349 (1st Cir. 1997)).  Thus, the petitioner "should not be heard to controvert his Rule 11 statements . . . unless he [has] offer[ed] a valid reason why he should be permitted to depart from the apparent truth of his earlier statement[s]."  United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984). . . . In relation to a motion to vacate sentence, ordinarily the court would have to "take petitioner's factual allegations 'as true,'" however it will not have to do so when like in this case "'they are contradicted by the record . . . and to the extent that they are merely conclusions rather than statements of fact.'"  Otero-Rivera v. United States, 494 F.2d 900, 902 (1st Cir. 1974) (quoting Domenica v. United States, 292 F.2d 483, 484 (1st Cir. 1961)).

CIVIL NO. 12-1575 (PG)                    22
(CRIMINAL NO. 10-0356 (PG))

Perocier-Morales v. United States, 887 F. Supp.2d at 417-18.

The argument that petitioner was forced to plea guilty by his attorney or that the plea was not factually supported is at best conclusory and contrary to the record of the change of plea.  Indeed, considering the colloquy with the court, petitioner could have opted to proceed to trial which was ultimately his right had he not chosen to enter a guilty plea.  He concludes that he was coerced by his attorney to pleading guilty after being assured that the entrapment defense would work at trial.  Petitioner appeared very satisfied with his attorney.  But if he was not, he had five months between pleading guilty and being sentenced to change his mind because he had no idea what he was charged with and considered himself innocent of the firearms charge or guilty but entrapped into committing the weapons violation.

Finally, petitioner received a favorable sentence if one considers the mandatory statutory minimum he originally faced if he proceeded to trial on the indictment.

B. ACTUAL INNOCENCE

Petitioner may avoid procedural default by demonstrating his actual factual innocence.  Schlup v. Delo, 513 U.S. 298, 327-28, 115 S. Ct. 851 (1995), cited in Fernandez-Malave v. United States, 502 F. Supp. 2d at 234, 239 (D.P.R. 2007). See Pinillos v. United States, 990 F. Supp. 2d 83, 100

CIVIL NO. 12-1575 (PG)                    23
(CRIMINAL NO. 10-0356 (PG))

(D.P.R. 2013).   That is, petitioner can avoid the procedural bar by demonstrating that it is "more likely than not that no reasonable juror would have convicted him in the light of new and reliable evidence of actual innocence." Schlup v. Delo, 513 U.S. at 327, 115 S. Ct. 851, cited in Parrilla-Tirado v. United States, 445 F. Supp 2d 199, 201 (D.P.R. 2006).   In Bousley v. United States, 523 U.S. at 623, 118 S. Ct. 1604, the Supreme Court explained that, '[t]o establish actual innocence, petitioner must demonstrate that, in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted her]'." Lorentsen v. Hood, 223 F.3d 950, 954 (9th Cir. 2000). See Rosa-Carino v. United States, 2015 WL 274165 at *10 (D.P.R.  January 22, 2015).  Petitioner must demonstrate that he is actually innocent of knowingly possessing a firearm in furtherance of a drug trafficking crime as defined in 18 U.S.C. § 924(c)(2),  involving a conspiracy and attempt to possess with intent to distribute cocaine.  In this case, actual innocence means factual innocence, not mere legal insufficiency.  And the evidence he relies on must be reliable and new.  It is certainly not new because he knew of it as early as when it occurred and as it was related to the court on reconsideration of detention.

The salient facts petitioner admitted at the plea hearing are as follows:

"...[O]n or about ... September 16, 2010, the defendant together with two co-defendants aiding and abetting each other agreed to provide armed protection for a drug transaction on behalf of a

CIVIL NO. 12-1575 (PG)                   24
(CRIMINAL NO. 10-0356 (PG))

>person they believed was a narcotics trafficker in exchange for cash
>payment.
>      [O]n September 16, 2010, the defendant together with the
>two co-defendants did arrive at an apartment located in Puerto
>Rico to provide that armed protection that had been previously
>agreed to. During that transaction, the defendant was told by the
>seller to keep his hands unexposed during the transaction, and also
>explained to the participants that this was going to be a quick
>transaction because the drugs were going to be immediately
>moved out of Puerto Rico.  The defendant Jonathan Ortiz was
>specifically charged with responsibility for searching the buyer
>when he entered the apartment.  During the transaction Jonathan
>Ortiz handled his 9-millimeter Glock pistol to the seller who
>examined it and returned it to him for use during the transaction.
>The defendant Jonathan Ortiz in fact remained in the apartment
>while the transaction was taking place and while the buyer
>inspected and counted the purported cocaine. During the
>transaction at all times this defendant was armed with the 9-
>millimeter Glock pistol and at the time he was actively employed as
>a police officer with the Puerto Rico Police Department.

   Criminal No. 10-356 (PG), Docket No. 165 at 14-15).

   A relation of the facts which petitioner agreed to that would be proven at

trial by the United States, reveals that the evidence of guilt was more than

sufficient for conviction.  And the Supreme Court has emphasized that the

actual innocence exception is very narrow, reserved for truly exceptional cases.

See Walker v. Russo, 506 F.3d 19, 21 (1st Cir. 2007) (citing Murray v. Carrier,

477 U.S. 478, 496 106 S. Ct. 2639 (1986); Rodriguez v. Martinez, 9354 F.

Supp. 2d 389, 396-97 (D.P.R. 2013).  This is not an exceptional case.  As I

have noted before this is a garden-variety reverse sting operation used for

CIVIL NO. 12-1575 (PG)                    25
(CRIMINAL NO. 10-0356 (PG))

years in Puerto Rico and focused on corrupt police officers who receive one or

two thousands of dollars for protecting "cocaine" transactions.  Petitioner

received his payment of $2,000 for a few minutes of work after his services

were no longer needed.  There is no evidence that he engaged in any other

such transaction, unlike other police officer in different cases who did.

Petitioner emphasizes that the weapon was not his and was thrusted on

him by the informant during the transaction.  The stipulated facts are prefixed

by a recitation of the pertinent part of the indictment and signed by petitioner.

(Criminal No. 10-356 (PG), Docket No. 52 at 12-14).

Petitioner was told by the court at the change of plea hearing:

> "At paragraph 12 there is a stipulation of facts mentioned
> therein that you have signed, and it has been incorporated into the
> plea agreement.  And by signing it you agree and accept that those
> facts are true and accurate in every respect and if this case had
> gone to trial with those facts,  the government could have proven
> your guilt beyond a reasonable doubt.  Do  you agree with that?
>          Defendant: Yes, sir.

(Criminal No. 10-356 (PG), Docket No. 165 at 11).

A guilty plea serves as a stipulation that no proof by the prosecution is

further needed, since it supplies both evidence and verdict, thus ending the

controversy. Boykin v. Alabama, 395 U.S. 238, 242 n. 4, 89 S. Ct. 1709

(1969).  The guilty plea is an admission that petitioner committed the crimes

CIVIL NO. 12-1575 (PG)                    26
(CRIMINAL NO. 10-0356 (PG))

charged against him.  <u>United States v. Broce</u>, 488 U.S. 563, 570, 109 S. Ct. 757 (1989), cited in <u>United States v. Correa-Manso</u>, 2006 WL 1514364 at *3 (D.P.R. May 30, 2006).  When the court recited the counts to which petitioner was pleaded guilty, he agreed to them and admitted those facts as alleged in the counts. (Criminal No. 10-356 (PG), Docket No. 165 at 13-14).

That petitioner's attorney might have persuaded him that pleading guilty was in his best interest, or that he strongly urged him to plead guilty, does not invalidate the plea due to lack of voluntariness, particularly under the circumstances here where easily over 100 police officers have entered pleas to practically identical charges.  <u>See e.g. United States v. Suarez-Colon</u>, 854 F. Supp. 2d 187, 190 (D.P.R. 2012) (citations omitted).  This is notwithstanding the two acquittals mentioned, both of which occurred in 2012, the year after petitioner was sentenced.  And his unequivocal guilty plea invites the inquiry as to which statements are true, the ones in his post judgment memoranda, or the ones solemnly presented to the court during the change of plea colloquy.  The allegation of actual innocence is therefore meritless.  I address other issues raised by petitioner for the court's consideration notwithstanding my opinion that they are fatally procedurally defaulted.

C. ENTRAPMENT

CIVIL NO. 12-1575 (PG)                27
(CRIMINAL NO. 10-0356 (PG))

Petitioner faults his lawyer for not explaining that there was an entrapment defense which from the argument it appears that by then, the lawyer should have been aware that it had been successful in at least two cases.  As explained below, this educated law enforcement officer always had the option to proceed to trial but what appears to be the result of the wisdom born of hindsight invites the argument that had he known of the defense of entrapment, he would have proceeded to trial, particularly since he did not arrive at the "meeting" armed.   It is not essential to recite the requirements for an entrapment defense or instruction since petitioner waived the defense by entering a guilty plea.  And whether he qualified or not for such a defense or instruction at trial is left for another day where the issue is preserved.  United States v. Gonzalez-Perez, 2015 WL 300967 at *3-4; United States v. Delgado-Marrero, 744 F.3d at 180[14]; cf. Rossetti v. United States, 773 F.3d 322, 329-30 (1st Cir. 2014).  Here, among the strategic choices that a lawyer will make in a sting case is to consider the defense of entrapment, which requires going to trial and admitting that the offense was committed but that he was improperly induced and had no predisposition to violate the law. See e.g.  United States v. Diaz-Castro, 752 F.3d at 109;  United States v. Rivera-Correa, 2014 WL

---

[14]Defendant Delgado-Marrero attempted an entrapment defense which was rejected by the court. On remand for new trial, Delgado-Marrero was sentenced to 60 months for the firearms offense as part of a plea negotiation.

CIVIL NO. 12-1575 (PG)                    28
(CRIMINAL NO. 10-0356 (PG))

3592089 at *4 (D.P.R. July 21, 2014).  That did not happen here.

Notwithstanding the moral outrage at the methods of the F.B.I. and the U.S.

Attorney's Office in separating members of the same conspiracy into different

indictments, this is nothing new.   Sting operation are commonplace in law

enforcement and criminal justice.  Where a defendant is provided with the

opportunity to commit a crime, the entrapment defense is of little use because

the ready commission of the criminal act amply demonstrates the defendant's

predisposition.  Jacobson v. United States, 503 U.S. 540, 549-50, 112 S. Ct.

1535 (1992).  Counsel negotiated a favorable agreement and the court made it

more favorable.  And he obviously did not foresee the probability of success in a

trial with an entrapment defense because the two acquittals he mentions

occurred in 2012, only within the grasp of attorney Corona's crystal ball at the

time of petitioner's July, 2011 sentencing.

                     D. CONFLICT OF INTEREST

        Petitioner argues that attorney Corona labored under an actual conflict of

interest because he was favored by the United States Attorney's Office but also

because he represented seven or eight other police or law enforcement officers

in "the conspiracy."   In Cuyler v. Sullivan, it was held that "[i]n order to

establish a violation of the Sixth Amendment, a defendant who raised no

objection at trial must demonstrate that an actual conflict of interest adversely

CIVIL NO. 12-1575 (PG)                    29
(CRIMINAL NO. 10-0356 (PG))

affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. at 348, 100 S. Ct. 1708 (footnote omitted).  The possibility is not enough, "a defendant [must show that his counsel actively represented conflicting interests." Id. at 350, 100 S. Ct. 1708.   I have viewed and reviewed petitioner's argument and even after reviewing and considering the extensive proffer in the memoranda of law, the conflict of interest cannot even be labeled potential, let alone actual.  The Sixth Amendment right to counsel is violated only when an actual conflict of interest adversely affects legal representation.  Bucuvalas v. United States, 98 F.2d 652, 656 (1st Cir. 1996).  The rote recitation of multiple representations invites nothing more than speculation.   However, "theoretical or merely speculative conflict of interest" does not constitute a Sixth Amendment violation. United States v. Soldevila-López, 17 F.3d 480, 487 (1st Cir. 1994) (quoting Mathis v. Hood, 937 F.2d 790, 795 (2d Cir. 1991) (citing United States v. Aeillo, 900 F.2d 528, 530-31 (2d Cir.1990)).  Clearly, the argument is totally undeveloped and provides nothing but conjecture for the court to weigh, insufficient to require or invite an evidentiary hearing on the matter.  Numerous attorneys represented more than one law enforcement officer in the sting, and some in the same case.  Attorney Corona represented at least thirteen of them. There was no one conspiracy but rather independent joint ventures as are common in stings.  And when more than one defendant was represented by the

CIVIL NO. 12-1575 (PG)                    30
(CRIMINAL NO. 10-0356 (PG))

same attorney in the same indictment, a conflict of interest hearing was held in view of the dangers involved.  While petitioner hints at skullduggery in a bombastic argument, the argument is gossamer.  The United States addresses the matter squarely and I adopt by reference its argument that there is no evidence of potential or actual conflict of interest.   See e.g. Mickens v. Taylor, 535 U.S. 162, 166, 122 S. Ct. 1237 (2002);   Reyes-Veteran v. United States, 276 F.3d 94, 97-98 (1st Cir. 2002); Campuzano v. United States, 976 F. Supp. 2d at 102.   Furthermore, it is a settled rule that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." Nikijuluw v. Gonzales, 427 F.3d 115, 120 n.3 (1st Cir. 2005);  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), cited in United States v. Diaz-Castro, 752 F.3d at 114 n.10.  Thus it is with the conflict of interest allegation and accusation against attorney Corona.  The same fate awaits the blanket allegations of prosecutorial misconduct accompanied with a threat that the U.S. Attorney's Office and the F.B.I. be investigated by the Civil Rights Division of the U.S. Department of Justice.  The history of the sting operation and "Operation Guard Shack" reflects its total transparency from the moment of the unsealing of the indictments, but not before. Circuit case law more than reflects the obvious.

IV. CONCLUSION and RECOMMENDATION

CIVIL NO. 12-1575 (PG)                    31
(CRIMINAL NO. 10-0356 (PG))

     Again, habeas corpus is an extraordinary remedy and is granted

sparingly.  Direct review, something petitioner chose to ignore, is more

defendant-friendly than post-judgment review. United States v. George, 676

F.3d 249, 258 (1st Cir. 2012), citing United States v. Frady, 456 US at 165-66,

102 S. Ct. at 1593.  Thus it is in this case.  See Ellis v. United States, 313 F.3d

636, 644-45 (1st Cir. 2002).  This case does not invite an extraordinary remedy.

 Petitioner is educated with specialized law enforcement knowledge.  Petitioner

entered into a favorable plea agreement with the government through his

experienced attorney. The government complied with the agreement and the

court, after hearing petitioner's statements at the plea hearing and at

sentencing in front of his family, reflected a quality of mercy in its justice.

Indeed, while petitioner questions how he fared among the many defendants

attorney Corona represented in the law enforcement field, of the fourteen

defendants counsel appears to have represented related to the sting, nine

received sentences higher than petitioner, although this ordinal measurement

means nothing because of the individualization involved during the sentencing

process, as reflected in comprehensive pre-sentence investigations.

     In view of the above, I find that petitioner Jonathan Ortiz-Muñiz has failed

to establish that his counsel's representation fell below an objective standard of

reasonableness.  See Strickland v. Washington, 466 U.S. at 686-87, 104 S. Ct.

CIVIL NO. 12-1575 (PG)                    32
(CRIMINAL NO. 10-0356 (PG))


2052 ; <u>United States v. Downs-Moses</u>, 329 F.3d 253, 265 (1st Cir. 2003).

Furthermore, even assuming that  petitioner has succeeded in showing a

deficiency in his legal representation, which he has failed to do, he is unable to

establish that any deficiency resulted in a prejudice against him in the criminal

proceedings.  <u>See</u> <u>Owens v. United States</u>, 483 F.3d at 63 (quoting <u>Strickland v.</u>

<u>Washington</u>, 466 U.S. at 687-88, 104 S. Ct. 2052).   I have stated before that

the conviction rate for corrupt police officers in this court is as high as the

general conviction rate of 95%+.  And just as 97% of all defendants nationwide

have chosen to do, petitioner decided to enter a guilty plea.  <u>Lafler v. Cooper</u>,

132 S. Ct. at 1388.  Had petitioner been convicted after trial on the indictment,

he faced a minimum term of 15 years in prison. <u>Cf</u>. <u>United States v. Nieves-</u>

<u>Velez</u>, 28 F. Supp. 3d 131, 133-35 (D.P.R. 2014).   Many police officers in other

cases are serving much longer sentences. For example, Criminal No. 10-344

(PG), where three defendant proceeded to trial.  Also see Criminal No. 10-342

(PG); Criminal No. 10-333 (GAG).  In absolute terms, petitioner suffered no

prejudice.  It is therefore impossible to find that claimed errors have produced

"'a fundamental defect which inherently results in a complete miscarriage of

justice' or 'an omission inconsistent with the rudimentary demands of fair

procedure.'"  <u>Knight v. United States</u>, 37 F.3d at 772 (quoting <u>Hill v. United</u>

<u>States</u>, 368 U.S. at 428, 82 S. Ct. 468).  Petitioner received a better sentence

CIVIL NO. 12-1575 (PG)                    33
(CRIMINAL NO. 10-0356 (PG))

than the one negotiated.  Cf. United States v. Nieves-Velez, 28 F. Supp. 3d at 133-34.

Accordingly, it is my recommendation that petitioner's  motion to vacate, set aside or correct her sentence under 28 U.S.C. § 2255 (Docket No. 1) be DENIED without evidentiary hearing.

Similarly I recommend that petitioner's supplemental motion filed on April 9, 2013 (Docket No. 13) be denied, also without evidentiary hearing.

Based upon the above, I also recommend that no certificate of appealability be issued,  because there is no substantial showing of the denial of a constitutional right within the meaning of Title 28 U.S.C. § 2253(c)(2). Miller-El v. Cockrell, 537 U.S. 322, 336-38, 123 S. Ct. 1029 (2003); Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000); Lassalle-Velazquez v. United States, 948 F. Supp. 2d 188, 193 (D.P.R. 2013).

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within fourteen (14) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155

CIVIL NO. 12-1575 (PG)                    34
(CRIMINAL NO. 10-0356 (PG))


(1985); <u>Davet v. Maccorone</u>, 973 F.2d 22, 30-31 (1st Cir. 1992); <u>Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.</u>, 840 F.2d 985 (1st Cir. 1988); <u>Borden v. Sec'y of Health & Human Servs.</u>, 836 F.2d 4, 6 (1st Cir. 1987); <u>Scott v. Schweiker</u>, 702 F.2d 13, 14 (1st Cir. 1983); <u>United States v. Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603 (1st Cir. 1980).

In San Juan Puerto Rico this 4th day of February, 2015.

S/ JUSTO ARENAS
United States Magistrate Judge